UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL JON GELAGOTIS,
      Petitioner,

      v.                                      No. 22-cv-11697-DLC

AMY BONCHER,
      Respondent.

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

CABELL, U.S.M.J.

    Pro se petitioner Michael Jon Gelagotis ("petitioner"), a federal inmate at the time he filed this habeas petition under 28 U.S.C. § 2241 ("section 2241"), alleges that the Bureau of Prisons ("BOP") did not properly calculate his earned time credits ("FSA credits") under the First Step Act ("FSA"), 18 U.S.C. §§ 3631-3635, and the Second Chance Act, 18 U.S.C. § 3624. (D. 1, ¶¶ 6(c), 15). The petitioner transferred to the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), from the Federal Correctional Institution in Oakdale, Louisiana ("FCI Oakdale"), in early December 2021 after he filed this petition. (D. 10-1, ¶ 6). A first ground for relief asserts that the BOP applied only 165 FSA credits toward his release date from FMC Devens even though he documented 240 credits. (D. 1, ¶ 13). In a second ground for relief, the petitioner contends that the BOP did not credit him

with participation in a recidivism reduction program, namely, "FPI-Unicor" ("the Unicor program"), from May 13 to November 10, 2021.[1] *See* 18 U.S.C. § 3632(d)(4)(C) (allowing FSA credits for "participat[ion] in recidivism reduction programs").

Respondent Amy Boncher ("respondent"), the warden at FMC Devens, moves to dismiss the petition as moot because of the petitioner's transfer from FMC Devens to supervised release on May 8, 2023. (D. 26). She submits that the petitioner's "release[] from BOP custody" eliminates any further relief the court could provide. (D. 26, 27). The petitioner did not file an opposition to the motion. For the reasons that follow, the motion to dismiss (D. 26) is allowed.

I. **STANDARD OF REVIEW**

Section 2241(c)(3) allows "a federal inmate who is 'in custody' to challenge the execution of (rather than the imposition of) his or her sentence." *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015). It thereby provides a mechanism to challenge "the BOP's calculation of [an inmate's] release date." *Calderon*

---

[1] A third "ground of relief" maintains that the petitioner is not required to exhaust administrative remedies on the basis of futility. (D. 1, ¶ 13). Futility undeniably provides a basis to excuse administrative exhaustion in a section 2241 petition. *See Roberts v. Warden, FCI Berlin*, Case No. 21-cv-874-LM, 2023 WL 2042585, at *1 (D.N.H. Feb. 15, 2023). Administrative exhaustion, however, is not a ground for relief. Rather, it is a precursor to judicial consideration of a ground for relief. *See generally Huffer v. Moyer*, Civil Action No. TDC-16-3235 2019 WL 4643981, at *2 (D. Md. Sept. 24, 2019) (explaining "exhaustion of state judicial remedies" first "require[s] exhaustion of administrative remedies that are a precursor to judicial review" of section 2241 petition).

*Hernandez v. Warden FMC Devens*, Civil Action No. 23-11330-MPK, 2023 WL 5939634, at *2 (D. Mass. Sept. 12, 2023); *Williams v. FCI Berlin*, Case No. 22-cv-564-JL, 2023 WL 5961688, at *1 (D.N.H. Aug. 1, 2023) (describing section 2241 as "traditionally available to prisoners challenging the BOP's computation of their sentences"), *report and recommendation adopted*, Case No. 22-cv-564-JL (D.N.H. Sept. 13, 2023).

A court examines "a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)." *Cardoza v. Pullen*, 3:22-CV-00591 (SVN), 2022 WL 3212408, at *3 (D. Conn. Aug. 9, 2022).  To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *accord Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 270 (1st Cir. 2022).

In evaluating a Rule 12(b)(6) motion, the court may consider certain narrow categories of documents outside the complaint.  *See Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).  These "narrow exceptions" include "documents the authenticity of which are not disputed by the parties" and "documents central to plaintiffs' claim."  *Calderon*, 2023 WL 5939634, at *3 (listing exceptions in deciding motion to dismiss

3

section 2241 petition) (internal quotation marks and citations omitted).  Because the petitioner does not challenge the authenticity of the declarations submitted by the respondent (D. 10-1, 27-1), they constitute part of the record.  *See id.* (considering BOP declaration in adjudicating section 2241 motion to dismiss) (citations omitted).  The FSA credit assessment, sentence monitoring computation data, and inmate history (D. 10-2, 10-3, 10-4, 27-2) fall under the same exception as well as the exception for documents central to the petitioner's claims for relief.  Regarding the latter exception, both grounds for relief seek the proper calculation of FSA credits toward the petitioner's release date, and the foregoing documents (D. 10-2, 10-3, 10-4, 27-2) are vital to that calculation.

## II.   BACKGROUND

On February 14, 2017, the United States District Court for the Eastern District of Texas sentenced the petitioner to a 100-month term of imprisonment followed by a three-year term of supervised release for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).  (D. 10-1, ¶ 5) (D. 10-2) (D. 27-2).  The court "committed [the petitioner] to the custody of the Bureau of Prisons." *United States v. Gelagotis*, Case No. 1:16-cr-00043-MAC-ZJH (E.D. Tex. Feb 14, 2017).  The commencement of his sentence began on the same date, February 14, 2017.  (D. 27-2).

On March 30, 2021, the petitioner arrived at FCI Oakdale, his designated facility.[2] (D. 10-1, ¶ 6) (D. 10-3). At that time, his projected statutory release date was March 21, 2024. (D. 10-2) (D. 27-2). On May 13, 2021, the BOP completed a Risk-Needs Assessment of the petitioner.[3] (D. 10-1, ¶ 11). The petitioner's score presumably made him eligible to accumulate FSA credits toward supervised release. (D. 10-4) (D. 10-1, ¶ 11); *see Hubbard v. Berlin*, Civil No. 23-cv-6-SE, 2023 WL 5726474, at *2 (D.N.H. July 31, 2023) (explaining medium or high pattern score ordinarily renders inmate ineligible for FSA credits whereas low or medium score renders inmate eligible), *report and recommendation adopted*, 2023 WL 5724935 (D.N.H. Sept. 5, 2023). By affidavit, an FMC Devens Case Management Coordinator attests that the petitioner began earning FSA credits as of May 13, 2021. (D. 10-1, ¶ 11).

Based on an October 9, 2022 FSA credit assessment by the BOP's automated credit calculation system, the petitioner earned 195 days of FSA credits as of that date. (D. 10-1, ¶ 10) (D. 10-4).

---

[2] The petitioner was housed at "In-Transit" facilities from July 31, 2020 to March 30, 2021. (D. 10-3). By regulation, the BOP deems an inmate's arrival at his or her designated facility as the date his or her sentence commences for purposes of earning FSA credits. 28 C.F.R. § 523.42(a).

[3] In conjunction with the enactment of the FSA, the BOP created a "risk assessment tool that measures offenders' criminal risk factors and specific needs to predict the likelihood that a person in federal prison will re-offend upon release." *United States v. DeCaro*, No. 1:96-CR-00005-JAR-1, 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022), *aff'd*, 2022 WL 19702639 (8th Cir. Nov. 29, 2022); 18 U.S.C. § 3632(a); (D. 12-1, p. 16). The assessment tool is known as "PATTERN," which "stands for Prisoner Assessment Tool Targeting Estimated Risk and Needs." *DeCaro*, 2022 WL 4395905, at *1 n.1. The four PATTERN risk scores are minimum, low, medium, and high-risk. *Id.*

At that time, the BOP applied 165 of those days toward his early release. (D. 10-1, ¶ 13) (D. 10-4). The prospective application of 165 days advanced the petitioner's projected March 21, 2024 release date to a projected October 8, 2023 release date. (D. 10-1, ¶ 13) (D. 10-2). The October 2022 assessment also allowed 90 FSA credits for the May 13 to November 11, 2021 time period, which coincides with the petitioner's participation in the Unicor program. (D. 10-4) (D. 1, ¶ 13).

Crucially, the petitioner began serving his term of supervised release on May 8, 2023. The BOP applied 318 FSA credits toward the petitioner's May 8 transfer to supervised release. (D. 27-2). Relatedly, the FSA allows an eligible prisoner to earn FSA credits toward supervised release. 18 U.S.C. §§ 3624(g)(3), 3632(d)(4)(C).

## II. **DISCUSSION**

As noted, the respondent seeks dismissal of the petition as moot. She argues that the petitioner's May 8 release from BOP custody eliminates the court's ability to provide the relief he requests. (D. 27).

"The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013). Indeed, this court "is duty bound to dismiss" a "claim

as moot if subsequent events unfold in a manner that undermines any one of the three pillars on which constitutional standing rests: injury in fact, causation, and redressability." *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006). As the party raising the doctrine, the respondent "must show that the court cannot grant any 'effectual relief whatever.'" *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 73 (1st Cir. 2006) (citation omitted).

Whereas "an individual serving a supervised release term" does "satisfy[y] the 'in custody' requirement,"[4] a section 2241 petition "must still target conditions that will have a *contemporaneous* or *prospective* impact on one's sentence." *Francis*, 798 F.3d at 37 (citing *Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014)) (emphasis added). In that vein, an inmate's "challenge to prison conditions or policies is generally rendered moot by his transfer or release." *Id.* (quoting *Ford*, 768 F.3d at 29). This is because "any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he [or she] originally asserted." *Id.* (quoting *Ford*, 768 F.3d at 29).

"To assess whether a claim is moot," the initial first step is to "determine what the claimant seeks." *Bais Yaakov of Spring*

---

[4] The respondent's characterization of the issue as jurisdictional because the petitioner "is no longer in BOP custody" (D. 27) is therefore misguided.

7

*Valley v. ACT, Inc.*, 798 F.3d 46, 53 (1st Cir. 2015). Here, the petition seeks a proper calculation of the petitioner's FSA credits. (D. 1, ¶¶ 13, 15). Ground one complains that the BOP applied only 165 days rather than the "documented 240 days." (D. 1, ¶ 13). Ground two seeks FSA credits for the Unicor program.

At present, the petitioner is released from FMC Devens and serving his term of supervised release. The statutory language of relevant FSA provisions, however, restricts the application of FSA credits to the time period prior to an inmate's transfer to supervised release as opposed to the time period of a supervised release term. *See generally Gonzalez v. Pierre-Mike*, Civil Action No. 1:23-cv-11665-IT, 2023 WL 5984522, at *4-5 (D. Mass. Sept. 14, 2023) (discussing caselaw interpreting language of FSA provisions and rejecting ground for relief to count unapplied FSA credits toward supervised release term); *Atwood v. FCI Berlin Warden*, Case No. 22-cv-526-JL, 2023 WL 2308531, at *1 (D.N.H. Jan. 19, 2023) (finding petitioner's release moots section 2241 petition challenging BOP's calculation of FSA credits and length of imprisonment).

Examining the relevant FSA provisions, section 3624(g)(3) states that the BOP "may transfer the prisoner to *begin*" a "term of supervised release at an earlier date, not to exceed 12 months, based on the application of [FSA] time credits." 18 U.S.C. § 3624(g)(3) (emphasis added). Use of the words "to begin" a

8

supervised release term "based on the application" of FSA credits unambiguously means to apply the credits before the inmate starts to serve supervised release as opposed to thereafter during that term.  *See United States v. Calabrese*, 2023 WL 1969753, at *3 (N.D. Ohio Feb. 13, 2023) ("Based on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release. Rather, the credits can only be used to allow early transfer to supervised release." (quoting *Harrison v. Fed. Bureau of Prisons*, No. 22-14312, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022))); *see Komando v. Luna*, No. 22-cv-425, 2023 WL 310580, at *3 (D.N.H. Jan. 13, 2023) ("FSA time credits, when applied, . . . accelerate the date when the prisoner will leave BOP custody to *start* a term of court-imposed supervised release.") (citing 18 U.S.C. § 3624(g)(3)) (additional citation omitted) (emphasis added).

A related FSA provision addresses the application of FSA credits *toward* the time spent in supervised release.  18 U.S.C. § 3632(d)(4)(C).  It states that time credits a petitioner earned successfully participating in a recidivism reduction program "shall be applied toward time in . . . supervised release."  *Id.*  Use of the word toward "generally means to bring that something," i.e., supervised release, "closer to happening."  *Gonzalez,* 2023 WL 5984522, at *4.

In all, it is not appropriate to apply FSA credits to shorten the ongoing term of supervised release.  The language of the above-

9

discussed FSA provisions cabins the application of FSA credits to the term of imprisonment, not the term of supervised release. Accordingly, the BOP's transfer of the petitioner to supervised release from FMC Devens moots the impact of applying FSA credits to accelerate his release or transfer date from FMC Devens to supervised release. *See Francis*, 798 F.3d at 37 (finding section 2241 petition seeking good time credits moot "once [petitioner] was released from . . . incarceration"). More precisely, the relief the petition seeks, i.e., a correct calculation and application of FSA credits, is moot and no longer redressable because FSA credits do not apply to supervised release, as shown by the foregoing FSA statutory provisions. As such, the FSA credits at issue lack a contemporaneous or prospective impact on the petitioner's sentence. *See id.* (Petition must still have "contemporaneous or prospective impact on [petitioner's] sentence.").

## III.  CONCLUSION

In accordance with the foregoing discussion, the motion to dismiss (D. 26) is **ALLOWED** and the petition is **DISMISSED**.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  September 29, 2023